631 So.2d 821 (1994)
Casey Keith McEWEN
v.
Linda Marie Edge McEWEN.
No. 92-CA-780.
Supreme Court of Mississippi.
February 10, 1994.
Thomas J. Lowe, Jr., Jackson, for appellant.
Ross R. Barnett, Jr., Barnett Law Firm, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
SULLIVAN, Justice, for the Court:
The McEwens were divorced in Hinds County on March 18, 1991, and Mrs. McEwen was granted custody of the two minor children, Logan Kyle McEwen and Jessica Marie McEwen. Mr. McEwen was ordered to pay child support in the amount of $400 per month per child, totalling $800 per month. The chancellor further ordered that Mr. McEwen would bear the costs of all medical and dental expenses incurred for the benefit of the two minor children.
On April 13, 1992, Mr. McEwen sought modification of the decree and a citation for contempt against his former wife. Mr. McEwen alleged that he had suffered a heart attack which had drastically reduced his ability to earn money and he requested a reduction in child support. He also requested that the medical bills of the minor children be divided equally between the parties as well as the future college expenses of the children. Mr. McEwen also alleged that Mrs. McEwen should be held in contempt for not allowing him visitation and for giving their children false information about him. Mr. McEwen also requested attorney's fees.
Mrs. McEwen's answer and counterclaim denied the allegations contained in the Complaint for Modification and Motion for Contempt. She also alleged that the Complaint *822 For Modification was frivolous, and she asked for an increase in child support stating that there had been a material change in circumstances, being an increase in child care costs.
A hearing was held on May 21, 1992, at which time the chancellor found Mr. McEwen in contempt of court in the amount of $400 for failure to pay child support. Mr. McEwen was ordered to repay Mrs. McEwen the $400 by paying $100 extra each month for four months beginning June 1, 1992. The chancellor acknowledged that Mr. McEwen had experienced some decrease in income; however, the chancellor did not find that there was a material change in circumstances sufficient to warrant a modification in the court's previous order for child support, particularly in light of Mrs. McEwen's inability to provide for the children's needs.
The chancellor extended Mr. McEwen's summer visitation with the children from two weeks to one month, during which time he would not be responsible for paying child support. The chancellor amended the previous order so that Mr. McEwen would only be responsible for one-half of any uninsured reasonable and necessary medical, dental, optical and drug expenses of the minor children.
Mr. McEwen is a managerial employee of Waffle House, and was responsible for managing six Waffle House stores in Dallas and four Waffle House stores in Houston. In February of 1992, he suffered a heart attack, which resulted in permanent damage to a wall of his heart. After that event the company reduced his area of responsibility by 40%, eliminating his managerial responsibility for the Houston stores, which Mr. McEwen alleges effectively reduced his income by 50%. Waffle House wrote a letter which corroborated Mr. McEwen's income reduction, although the letter indicates that his income was only reduced by 40%. However, Mr. McEwen claims that one bonus listed on the letter from Waffle House, a monthly SNP bonus of $180, would soon not be reflected in his check. He did admit that if business picked back up he could possibly start receiving the $180 bonus again. At the time of the hearing Mr. McEwen testified that his savings had been depleted and that he had withdrawn all his money in any profit sharing plan or pension plan with Waffle House.
The uncontradicted evidence shows that Mr. McEwen's gross annual income was reduced from $52,739.15 to approximately $28,470.00, a monthly difference in gross pay of approximately $2,020. His gross pay every four weeks was $2,190. This figure less taxes ($503.00), chargebacks from shortage ($77), and insurance that also covers the children ($200), resulted in $1,410 in take home pay every four weeks. This figure less the present child support award of $800 left Mr. McEwen $727.50 per month to live on.
Mrs. McEwen testified that she and the two children live in Pensacola, Florida. She testified that she had been a waitress at Quincy's family restaurant since her separation from Mr. McEwen, approximately two and one-half years, and that she averaged about $500.00 a month which she does not pay taxes on. This coupled with Mr. McEwen's child support payments gives her a net income of about $1,300 per month.
Mrs. McEwen further testified that she and the children were living with her sister and that she paid $200.00 per month in rent. She stated that she does not take the children to day care because she cannot afford it, but that a lady had been watching them for her for two years at a cost of $240 a month. Mrs. McEwen said that her youngest child would be starting pre-kindergarten the following year and her oldest child would be in kindergarten. Mrs. McEwen testified that she needed the baby sitter to watch the children after school because she was still at work when they got out for the day. Mrs. McEwen also testified that Mr. McEwen had never reimbursed her for medical bills she had paid and that he owed her $400 for February child support. Mrs. McEwen requested $750.00 in attorney's fees.
Because the car she was awarded at the divorce hearing had been repossessed and the children were getting older and their needs had changed, she requested an increase on the theory that $800 per month in child support is not enough.
*823 On cross-examination Mrs. McEwen testified that the house she was living in was owned by her sister, which had been given to her sister by Mrs. McEwen's father. She stated that the $200 monthly rent was her contribution to the repairs which her sister had made on the house. She also testified she had been offered a management job with Quincy's which would pay more money but that she would not accept the position because it would require her to work three to four nights a week until one o'clock in the morning, which she felt would have an adverse effect on her children.

DID THE CHANCELLOR ABUSE HER DISCRETION IN DENYING MR. McEWEN'S MOTION TO REDUCE HIS CHILD SUPPORT PAYMENTS?
While a chancellor is accorded broad discretion in the area of modification of child support, this Court will reverse when the chancellor is manifestly in error in finding of fact or if there has been an abuse of discretion. Hammett v. Woods, 602 So.2d 825, 828 (Miss. 1992).
To obtain a modification in child support payments, there must be a "substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified." Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss. 1992). The change must not be one that could have been anticipated by the parties when the chancellor entered the original decree. Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss. 1990).
Mr. McEwen's heart attack approximately one year after the original decree was entered indisputably resulted in a precipitous decline in his income. On the testimony in this record if the original decree is left intact ordering $800.00 a month in child support, Mr. McEwen would currently be responsible for paying over one-half of his income in child support payments alone. It certainly cannot be argued that the parties at the time of the entry of the decree could have anticipated Mr. McEwen's heart attack.
In Cupit v. Cupit, 559 So.2d 1035, 1038 (Miss. 1990), we held an award of $200 per child for two children to be clearly excessive in consideration of Mr. Cupit's net monthly income of $973.60. Mr. McEwen is presently required to pay an even greater percentage of his monthly income in child support than the excessive amount cited in Cupit. Mr. McEwen's ability to pay should have been more carefully considered by the chancellor when she denied his request for modification of child support payments.
Examining the guidelines set forth in Miss. Code Ann. § 43-19-101 (Supp. 1992), Mr. McEwen would be required to pay a total of approximately $305.00 per month for both children (20% of adjusted gross income). We have stated many times that these guidelines are only an aid to the chancellor and will be effectively rebutted by a finding contrary thereto. Hammett, 602 So.2d at 828; Thurman v. Thurman, 559 So.2d 1014, 1017-18 (Miss. 1990).
It is significant to note, however, that the guidelines' suggestion and the actual child support ordered in this case constitute a difference of nearly $500 a month.
It is also significant to note that the chancellor found that there had been some decrease in income, but not a material or substantial change in circumstances such as to warrant a reduction in child support payments. However, the chancellor did reduce Mr. McEwen's contribution to uninsured medical expenses.
The chancellor specifically stated that since the children were currently enrolled in day care facilities which would constitute a significant portion of the child support money, the original decree should not be modified. The record actually indicates that the older of the two children would be starting kindergarten and the younger of the two would be starting pre-kindergarten. The chancellor presumably was referring to the babysitting cost of $240 a month for after school care, listed as an expense by Mrs. McEwen. The implication of the chancellor's ruling was that the children were getting a little older and starting school and therefore the $800 a month was needed for their well being. It is arguable, however, that child care expenses will actually decline when the younger child starts attending school. In *824 Gillespie, 594 So.2d at 623, the chancellor anticipated additional expenses as a result of the child beginning kindergarten. This Court stated that beginning kindergarten did not necessarily result in additional expenses.
The reasonable financial resources of the parents is one of the key factors in considering whether or not a modification in child support is in order. Mr. McEwen has the right to lead a decent life, and the present order of the chancellor will not allow him to do so. It was manifest error and an abuse of discretion for the chancellor to find that there had not been a material or substantial change in circumstances warranting a modification of Mr. McEwen's child support payments.
The decree of the court below is reversed and the cause is remanded to the chancery court for a determination of Casey McEwen's present ability to pay. At rehearing, the chancellor may consider any relevant circumstances that have taken place since the decree appealed from was entered.
REVERSED AND REMANDED TO THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.