# IN THE COURT OF APPEALS 10/15/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-00221 COA

## CONSOLIDATED WITH

## NO. 94-CA-00421 COA

**RUTH ANN STRIEBECK**

**APPELLANT**

**v.**

**JOHN HOWARD PROVENZA**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. GERALD E. BRADDOCK

COURT FROM WHICH APPEALED: WASHINGTON COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT:

KINNEY M. SWAIN & J. MACK VARNER

ATTORNEYS FOR APPELLEE:

RABUN JONES & HOWARD DYER, III

NATURE OF THE CASE: DOMESTIC

TRIAL COURT DISPOSITION: SUMMARY JUDGMENT GRANTED IN FAVOR OF
PROVENZA ON CAUSE NUMBER 94-CA-00221; ON CAUSE NUMBER 94-CA-00421
PROVENZA WAS ORDERED TO INCREASE CHILD SUPPORT TO $800 PER MONTH AND
ORDERED TO PAY ONE-HALF OF ALL MEDICAL EXPENSES NOT COVERED BY
INSURANCE.

BEFORE THOMAS, P.J., BARBER, AND PAYNE, JJ.

THOMAS, P.J., FOR THE COURT:

Ruth Ann Striebeck and John Howard Provenza were granted a divorce in 1988 on the ground of irreconcilable differences. In 1993, believing that Provenza had hidden assets from her during their divorce, Striebeck ceased paying to Provenza a monthly payment on his interest in the marital dwelling as set out in the parties' property settlement. Subsequently, Provenza foreclosed on the property.

Striebeck filed a petition to have the land deed of trust declared void and simultaneously filed a petition to have the original divorce decree modified. These causes of action were never consolidated at the trial level.

On the modification matter, the trial court increased Provenza's child support obligations from $500 to $800 per month and ordered Provenza to pay one-half of all major medical expenses not covered by insurance, but ordered Striebeck to pay the first $250. The chancellor denied all other relief requested by Striebeck.

On the petition to have the deed of trust declared void ("the independent matter"), the trial court granted summary judgment on behalf of Provenza. The trial court found that the matter was not timely filed under Mississippi Rules of Civil Procedure 60(b).

Feeling aggrieved of the chancellor's rulings Striebeck appeals both causes to this Court, which have been combined for appellate review. Finding that the trial court erred in granting summary judgment on the independent matter, we reverse. We affirm the trial court on the modification hearing.

FACTS AND PROCEDURAL HISTORY

In 1972, Ruth Ann Striebeck and John Howard Provenza were married. From this marriage two children were born. One child, Stephen Provenza, was diagnosed with neuroblastoma, a form of cancer, in 1984. As a result, Stephen has had three surgical operations and extensive radiation treatments. Each year Stephen has to be taken to St. Jude's Childrens Hospital in Memphis, Tennessee, for an annual checkup.

Prior to the marriage of Striebeck and Provenza, Striebeck's father had set up a trust and/or partnership for his five children. Striebeck also had an interest in the "Jesse E. Brent Barge Rentals," which was a trust set up by her grandfather for all of his grandchildren. Provenza brought no assets to the marriage.

At the time of marriage, Provenza was working at the Pepsi-Cola Bottling Company in Greenville, Mississippi, which was owned by his father and his uncle. While working for his father, Provenza was given shares of stock in the corporation.

In 1981, Provenza quit his job with his father and began to work for Striebeck's father, who owned a partnership interest in Brent Marine Supply Company. Provenza was also allowed to become partners

in a business owned by Striebeck's two brothers, the Delta Gulf and Navigation Company. Subsequently, this partnership purchased a tow boat from another company owned by Striebeck's father.

Striebeck asserts that during her marriage, Provenza had her withdraw over $92,000 from the "Brent Five Partnership," of which $12,000 of the $92,000 went to improving the marital domicile. Additionally, she withdrew approximately $45,000 from the "Jessie E. Brent Barge Rentals," which was also used to remodel their home.

Part of the money that Striebeck was asked to withdraw from her trust fund was sent to Bo Bowen, a friend of Provenza's, to buy insurance. Striebeck asserts that she has recently learned that the funds which Provenza had her send to Bo Bowen were not put in insurance policies in which she was an owner.

In January of 1988, Striebeck was approached by Chris Glasco. Chris Glasco told her that he had recorded some telephone conversations that took place between his wife and her husband, Provenza. Striebeck listened to one tape and approached Provenza, asking him if he was having an extra-marital affair. Provenza told her that nothing was going on between Mrs. Glasco and himself.

Striebeck and Provenza were granted a divorce in 1988 on the ground of irreconcilable differences. As part of their divorce, Provenza was to quit claim all of his interest in the marital dwelling to Striebeck in exchange for $23,000, which was to be paid in monthly installments of $370.07. Provenza was also required to pay Striebeck $500 per month in child support in addition to maintaining health insurance for the minor children. There was no provision for the payment of medical expenses not covered by insurance. There likewise was no mention of Provenza's Pepsi-Cola stock nor his ownership interest in the Delta Gulf & Navigation Co. However, in the final divorce decree it was stated:

> H. It was specifically understood that both Husband and Wife have separate legal title to other personal property, consisting of investments, trusts, and like interests, and the other disclaims any legal equitable interests therein. Unless specifically provided for herein, all equitable interests therein are merged into the legal title thereto.

In addition to the property settlement in the divorce decree, a private divorce settlement was agreed upon by the parties. In this private agreement Provenza would get one-half of Striebeck's interest in her trust funds and would get all of the funds held by Prudential-Bache Securities, Inc. Striebeck now asserts that she was unduly influenced into making this agreement, and furthermore, would never have made this agreement had she known Provenza's true net worth.

Striebeck alleges that in 1993, she learned that Provenza had secreted funds and income from her during their marriage and subsequent divorce, including but not limited to certain stocks, motor vessels and other sources of income. In particular, she asserts that Provenza failed to disclose that during their separation Provenza received $114,381.45 for stock that he owned in Pepsi-Cola. Furthermore, after telling Striebeck that the Delta Gulf and Navigation Company was in financial

trouble and that the company's tow boat had no market value, Provenza received a check for $120,000 for the sale of the tow boat. She also asserts that during her marriage Provenza held a private checking account in which he secreted funds. Striebeck claims that Provenza hid this checking account from her by having all bank statements sent to a post office box to which she had no access.

After learning of this alleged deceit, Striebeck stopped all payments to Provenza for his interest in the marital dwelling as set forth in the divorce decree. Provenza subsequently foreclosed on Striebeck's home.

Striebeck filed a petition to have the land deed of trust (the independent matter) declared void and simultaneously filed a petition to have the original divorce decree modified. In her petition to have the land deed of trust declared void, Striebeck asserted: (1) common law fraud and (2) undue influence and overreaching. Striebeck prayed: (1) that she should be given all monies that she has paid to Provenza for the marital home plus $100,000 in punitive damages; (2) that the private agreement between the parties is not enforceable as a matter of law because it was not approved by the court and because it was obtained through undue influence; (3) that Provenza be required to pay Striebeck $25,730.62 in monies obtained by Provenza from the "Brent Family Investment Club Trust" plus interest; (4) that Provenza should pay Striebeck one-half of all monies received from the sale of the assets of Delta Gulf and Navigation Company; and (5) that Provenza should be required to pay her attorney's fees.

On the same day that the petition to have the land deed of trust declared void, Striebeck also filed a petition to modify child support. Striebeck asserted that since the divorce Striebeck has had to pay approximately $6,000 in medical bills for the two children which were not covered by insurance. Part of this money went to buying hearing aids for their son, Stephen, who suffered hearing loss as a result of his chemotherapy treatments. She claims that Provenza has told her that he does not have any money and cannot help with the expense.

The trial court granted Provenza's motion for summary judgment as to the petition to have the land deed of trust declared void because it was not timely filed under Mississippi Rule of Civil Procedure 60(b). As to the petition to modify, the trial court increased the child support from $500 per month to $800 per month, and ordered Provenza to pay one-half of all medical expenses not covered by insurance, with the exception that Striebeck was to pay the first $250 of each claim. The chancellor denied all other relief requested by Striebeck.

DISCUSSION

Striebeck appeals the two rulings of the chancellor to this Court. She asserts numerous alleged errors both in the Independent Matter (petition to have the land deed of trust declared void), and also the petition to modify. Her first issue on both causes is the same and will be combined for appellate review.

I.

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND FACT FOR REFUSING TO RECUSE HIMSELF FROM THE MODIFICATION MATTER AND THE INDEPENDENT MATTER.

Striebeck asserts that the trial court was in error in failing to recuse himself because the chancellor was having ex parte communications with Provenza's counsel, and because discovery revealed certain improprieties committed by Striebeck's divorce attorney Martin Kilpatrick who routinely practiced within the trial court's district.

Our supreme court has adopted an objective test to determine when a judge should recuse himself from a particular case. *Jenkins v. State*, 570 So. 2d 1191, 1192 (Miss. 1990). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality." *Id.* Striebeck has not shown to this Court that a reasonable person would "harbor doubts about [the judge's] impartiality"; therefore, we find this issue to be without merit.

II.

INDEPENDENT MATTER

Striebeck's first four issues deal with whether the trial court erred in applying Mississippi Rule of Procedure 60(b) to her petition against Provenza for fraud and undue influence. We have combined these four issues in our discussion, and find that the trial court was in error in applying Rule 60(b) to the independent action.

A. Whether the trial court erred as a matter of law in applying Rule 60(b) to grant summary judgment against Striebeck's claims.

Striebeck argues that the trial court erred in applying Rule 60(b) to foreclose her "independent action" against Provenza for fraud and undue influence. In considering the facts in the light most favorable to Striebeck, Provenza fraudulently convinced Striebeck that he had no money and that his business was in financial trouble, thereby persuading Striebeck to convey to him one-half of Striebeck's interest in her trust funds, as well as all of the funds held by Prudential-Bache Securities, Inc. All the while Provenza was complaining of having no money, Provenza was secreting funds into private accounts and had received close to $250,000 from various investments. The agreement entered into by the parties was a private agreement, was entered into prior to the parties divorce, and was never incorporated into the final divorce decree. In fact, in the parties' property settlement: "It was specifically understood that both Husband and Wife have separate legal title to other personal property, consisting of *investments, trusts, and like interests*, and the other disclaims any legal equitable interests therein."

When Striebeck learned that Provenza had deceived her, she immediately filed a fraud action against Provenza with the lower court, which granted summary judgment against her. The trial court, held that Striebeck, who did not learn of the fraud until some four years later, was without any recourse. We disagree.

Rule 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or his

> legal representative from a final judgment, order, or proceeding for the following reason:
>
> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> . . . .
>
> The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order or proceeding was entered or taken. . . . *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.*

M.R.C.P. 60(b) (emphasis added).

Since the private agreement of which Striebeck complains was never incorporated into the final divorce decree, how can an attack on that agreement be considered as an attack on a final judgment? This Court finds that it cannot; therefore, Striebeck's claim should not be barred under Rule 60(b).

As already stated above, the private agreement entered into by the parties was done prior to the parties' final divorce decree. Nowhere in that divorce decree does it mention this private agreement, and therefore, under our standard of review, taking the facts in the light most favorable to Striebeck, this private agreement was never brought to the chancellor's attention.

Under the laws of this State, such private agreements entered into by Striebeck and Provenza are unenforceable. In *Traub v. Johnson*, 536 So. 2d 25 (Miss. 1988) our supreme court looked at a situation similar to ours. In that case the parties were granted a divorce on January 19, 1984. Prior to that time they entered into a property settlement agreement and a separate private agreement which was never incorporated into the divorce decree. Ten months later, well after the six month limitation of Rule 60(b), the wife filed a complaint for modification. After a hearing on the merits the chancellor ruled that the separate property agreement entered into by the parties was "not a part of the written agreement submitted to the chancery court and that therefore, this agreement was not enforceable." *Traub*, 536 So. 2d at 26. The chancellor set aside the conveyances and ordered that the husband repay the wife for all monies taken out of her trust account plus interest.

On appeal our supreme court quoting *Sullivan v. Pouncey*, 469 So. 2d 1233, 1234 (Miss. 1985), stated:

> In reviewing this cause, we first note that the divorce was granted on the grounds of irreconcilable differences subject to Mississippi Code Annotated, Section 93-5-2 (1972). That form of divorce requires that the parties enter into a property settlement agreement, which is to be incorporated into the final decree. *Switzer v. Switzer*, 460 So. 2d 843 (Miss. 1984). *A prior agreement entered into by the parties is not enforceable, if not approved by the court.* It would be tantamount to defrauding the court for parties to present to the court a property settlement agreement which is subsequently incorporated into the

final decree, while actually intending to abide by a contradictory, private contract. This is clearly against public policy.

*Traub,* 536 So. 2d at 26 (emphasis added).

Just like in the *Traub* case, the parties in this case entered into a private settlement agreement that is not mentioned in the property settlement agreement in the divorce decree. If this settlement agreement was not placed before the chancellor, then under *Straub*, the agreement is unenforceable and the conveyances should be set aside. By granting summary judgment in this cause and through the limitations in discovery, Striebeck was not given the opportunity to prove her case. She should be given the chance to prove that the private agreement was never incorporated into the divorce decree and that the chancellor was never informed of the same, thereby making the agreement unenforceable. The grant of summary judgment against Striebeck on the independent action as it relates to the private agreement entered into by the parties is reversed and remanded for a hearing on the merits.

III.

MODIFICATION MATTER

Standard of Review

"A chancellor is afforded broad discretion in the area of modification of child support and this Court will reverse only when the chancellor was manifestly in error in a finding of fact or if there has been an abuse of discretion or when an erroneous legal standard was applied." *Herrington v. Herrington*, 660 So. 2d 215, 217 (Miss. 1994) (citing *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994); *Tilley v. Tilley*, 610 So. 2d 348, 351 (Miss. 1992); *Hammett v. Woods*, 602 So. 2d 825, 828 (Miss. 1992)).

A. Whether the trial court erred in limiting Striebeck's discovery to only Provenza's canceled checks for the year of 1993.

Provenza was ordered by the trial court to provide Striebeck his bank statements for only the year of 1993. Striebeck asserts that as a result of this limitation she was unable to fully ascertain all of Provenza's hidden assets and incomes needed to determine properly the amount of child support. Striebeck argues that the chancellor could not correctly determine Provenza's ability to pay child support and other expenses because she was not allowed to discover all of Provenza's sources of income.

Our supreme court has stated that the trial court has considerable discretion in matters relating to discovery. *Dawkins v. Redd Pest Control Co,* 607 So. 2d 1232, 1234 (Miss. 1992). This Court will not reverse or disturb the discovery orders of the trial court unless there has been an abuse of discretion. *Clark v. Mississippi Power Co.*, 372 So. 2d 1077, 1080 (Miss. 1979); *see Palmer v. Biloxi Regional Medical Ctr., Inc.,* 564 So. 2d 1346, 1368 (Miss. 1990). We cannot say that the trial

court abused its discretion in limiting discovery.

B. Whether the trial court erred in refusing to require Provenza to pay the extraordinary expenses of the two minor children even though the divorce decree was silent as to the payment of such expenses.

In the modification hearing, Striebeck submitted evidence that she had expended over $20,000 in extraordinary expenses for the two minor children, without any assistance from Provenza. She argues that the chancellor committed error in refusing to order Provenza to reimburse her for one-half of those expenses.

To prevail on this point Striebeck must show that there had been a substantial and material change in circumstances and that this change could not have been anticipated at the time of the divorce. *McEwen*, 631 So. 2d at 823. The trial court ruled that most of the expenses complained of by Striebeck were not extraordinary. However, the chancellor did order Provenza to pay one-half of the hearing aid expenses for the year of 1993, after making a finding that "it was not foreseen that such expenses would be astronomical." The trial court did not abuse its discretion in denying Striebeck's claim for her remaining expenses. *Palmer,* 564 So. 2d at 1368; *Clark*, 372 So. 2d at 1080. It is clear from the record that these alleged extraordinary expenses complained of by Striebeck were anticipated at the time of the divorce and therefore are not recoverable.

C. Whether the trial court was in error in making Striebeck pay for the first $250 of the children's medical expenses not covered by insurance.

In the case *sub judice* the chancellor ordered Provenza to pay one-half of all future medical expenses not covered by insurance, but ordered Striebeck to pay the first $250 for each claim. Striebeck asserts that the medical expenses not covered by insurance for the two minor children only amount to $250 per year, and therefore, the chancellor's ruling, in effect, orders Striebeck to pay all medical expenses not covered by insurance. Striebeck argues that "Provenza should be obligated to pay for all of the children's medical expenses not covered by an existing insurance policy and for all costs of Stephen's future hearing aid expenses."

Under our standard of review, we must affirm the chancellor's ruling unless there has been an abuse of discretion. *Palmer,* 564 So. 2d at 1368; *Clark*, 372 So. 2d at 1080. We find no abuse here, therefore, we must deny Striebeck's claim.

D. Whether the trial court erred when it refused to reimburse Striebeck for all funds she has expended or future funds she expends in regard to the minor child Stephen attending the Sylvan Learning Center.

The chancellor made a specific finding of fact that the Sylvan Learning Center, which is not a medical facility, is not an extraordinary expense. We must agree with the chancellor's finding. Striebeck put forth no expert proof that this expense is a necessary expense, and therefore, under our standard of review we find that the trial court did not abuse its discretion in denying Striebeck contribution from Provenza. *Palmer,* 564 So. 2d at 1368; *Clark*, 372 So. 2d at 1080.

E. Whether the trial court erred in refusing to consider in-kind services Striebeck provided for the two minor children and whether the trial court erred in determining Provenza's child support obligation.

Striebeck argues that the trial court erred when it increased the child support by only three hundred dollars without any mention or calculation of "in-kind" services provided by Striebeck. She further argues that the trial court did not properly take into account Provenza's income in determining the amount of child support that he should pay.

As stated above, the trial court found that there had been a substantial and material change in circumstances, thereby increasing Provenza's child support payments from $500 to $800 per month. Again, we must apply an abuse of discretion standard to all modifications of child support. *Palmer,* 564 So. 2d at 1368; *Clark*, 372 So. 2d at 1080. The trial court heard all of the testimony and evidence presented at trial and found that a three hundred dollar increase in child support would be a sufficient enough increase to cover the change in circumstances. We will not disturb this finding.

CONCLUSION

This Court is reversing the chancellor's grant of summary judgment in the independent matter, because we find that it was indeed an "independent matter"; therefore, the six-month time limitation contained in Rule 60(b) would not be applicable. We are affirming the chancellor's ruling on the modification matter. The chancellor was correct in increasing Provenza's child support from $500 per month to $800 per month. The remaining claims asserted by Striebeck in the modification matter are denied.

**THE JUDGMENT OF THE CHANCERY COURT OF WASHINGTON COUNTY IN CAUSE NUMBER 94-CA-00221 IS REVERSED AND REMANDED. THE JUDGMENT IN CAUSE NUMBER 94-CA-00421 IS AFFIRMED. COSTS OF APPEAL ARE TAXED EQUALLY BETWEEN THE PARTIES.**

**FRAISER, C.J., COLEMAN, DIAZ AND PAYNE, JJ., CONCUR**.

**MCMILLIN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARBER AND SOUTHWICK, JJ.**

**BRIDGES, P.J., AND KING, J. , NOT PARTICIPATING.**

# IN THE COURT OF APPEALS 10/15/96

## OF THE

## STATE OF MISSISSIPPI

### NO. 94-CA-00221 COA

### CONSOLIDATED WITH

### NO. 94-CA-00421 COA

**RUTH ANN STRIEBECK**

**APPELLANT**

**v.**

**JOHN HOWARD PROVENZA**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

McMILLIN, J., DISSENTING:


I respectfully dissent insofar as the majority concludes that the cause of action asserted by Mrs. Striebeck is an "independent action" not subject to the six-month limitation period of Mississippi Rule of Civil Procedure 60(b). What Mrs. Striebeck is attempting to do is to set aside a number of transfers of property that were fully accomplished prior to the parties entering into the property agreement that became a part of the divorce judgment. These transfers are simply not a separate unsanctioned "private agreement" within the meaning of *Traub v. Johnson*, 536 So. 2d 25 (Miss. 1988). The agreement in *Traub* was entered into during the divorce proceeding and after the parties had entered into a separate agreement that was presented to the chancellor for approval. *Id.* at 25-26. In this case, the transfers were not accomplished in conjunction with the divorce, nor is there any evidence whatsoever that they were done in contemplation of a divorce proceeding. The transfers are factually indistinguishable from similar transfers of property that occur between spouses on a routine basis in a myriad of circumstances every day. To say that every transfer of property accomplished between spouses prior to a divorce is subject to an attack for fraud if one spouse is willing to claim that he or she was induced to make the transfer through the fraud of the other renders all divorce judgments meaningless. Every divorce judgment would, under the majority's rationale, become subject to collateral attack simply upon an allegation that the *status quo ante* was the result of fraud.

A divorce proceeding is the proper forum to resolve any and all issues of property rights existing between the parties. Miss. Code Ann. §§ 93-5-2(2),-23 (1972). Discovery devices exist in abundance to ferret out the true facts that unscrupulous litigants would attempt to conceal. Such devices, if vigorously pursued, offer the parties and the court some degree of certainty as to the true financial picture of both parties to the marriage. Yet the court does not have the authority to compel a litigant to pursue such avenues to the ultimate end. It is, rather, the litigant's decision at what point he or she is prepared to accept a proposed settlement and, inevitably, thereby assume some degree of risk that the other side has been less than truthful. At that point, society has a stake in the finality of such an arrangement so that it can commit its limited dispute-resolution resources to other controversies. Balanced against this worthwhile interest in finality is the recognition that, on occasion, litigants will take improper advantage of each other. Our rules simply require a reasonable measure of diligence on the part of litigants to discover and pursue such alleged fraud within six months of the otherwise final resolution of their dispute. That this window of opportunity is somewhat limited is beyond the authority of this Court to disturb even were we so inclined, which I am not. The fraud alleged in this case is not a "fraud upon the court" exempt from the six-month limit of the rule. M.R.C.P. 60(b). The leading treatise on the parallel rule in the federal system,

often cited by the supreme court in interpretation of our procedural rules, makes this abundantly clear:

> Perhaps the principal contribution of all of these attempts to define "fraud upon the court" and to distinguish it from mere "fraud" is as a reminder that there is a distinction. Any fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense. That cannot be the sense in which the term is used in the final saving clause of Rule 60(b) . . . the draftsmen must have conceived of "fraud upon the court," as they

used that phrase, as referring to very unusual cases involving "far more than an injury to a single litigant."

11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2870 (1973).

The chancellor properly applied the bar of Mississippi Rule of Civil Procedure 60(b) to Mrs. Striebeck's claims of fraud, and this case should, in my opinion, be affirmed.

**BARBER AND SOUTHWICK, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**