BARNES, J.,
for the Court.
¶ 1. The motion for rehearing is granted. The previous opinion of this Court is withdrawn, and this opinion is substituted therefor.
¶ 2. Roland Weeks and Deborah Weeks return for their second appeal of their marital dissolution. In the first appeal, this Court remanded the case to allow the chancellor to make findings regarding Deborah’s requests for periodic alimony, medical insurance, and attorney’s fees.[1] Deborah now appeals from the chancellor’s judgment after remand.
¶ 3. Deborah contends that the chancellor erred (1) in finding that Roland was required to pay a fixed rate for Deborah’s health insurance, (2) in finding that Roland had complied with a court order requiring him to maintain a life insurance policy for Deborah, (3) in finding that Roland has complied with his child support obligations, (4) in refusing to order retroactive modification of child support, (5) in refusing to modify his award of alimony, and (6) in *83 failing to award Deborah’s attorney’s fees for her appeal and the proceedings after remand.
¶ 4. Finding error, we affirm in part and reverse and remand in part.
FACTS
¶ 5. Deborah was granted a divorce from Roland on April 4, 2001. Since then, they have been in constant litigation over the financial aspects of their divorce. Deborah received her proceeds from the division of the marital estate in 2003.
¶ 6. In Weeks I, this Court upheld the chancellor’s division of assets and remanded the case for the chancellor to award periodic alimony to Deborah. Weeks I, 832 So.2d at 588(¶ 21). We also ordered the chancellor to consider whether Roland should be required to pay for Deborah’s medical insurance as part of alimony. Id. at 588(¶ 22). In addition, we instructed the chancellor to analyze the factors found in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982) for a determination of whether Deborah was entitled to an award of attorney’s fees. Weeks I, 832 So.2d at 588(¶ 24).
¶ 7. After remand, the chancellor held a hearing on these issues and entered a judgment awarding Deborah three thousand dollars per month as periodic alimony. Roland was also ordered to pay $516 per month for Deborah’s health insurance premium. Further, Roland was ordered to maintain life insurance policies on himself in the amount of three hundred thousand dollars each, with Deborah and their daughter, Alex, named as irrevocable beneficiaries. The chancellor reviewed the McKee factors and held that Deborah should be awarded twenty-five thousand dollars in attorney’s fees from Roland, subject to a credit for seventy-five hundred dollars that Roland had previously paid. The attorney’s fees were intended to be only for the divorce proceedings, rather than for any of the proceedings after remand. The chancellor found that both Deborah and Roland possessed net assets worth over one million dollars after the division of the marital estate.
¶ 8. The chancellor’s judgment also addressed Deborah’s petition for modification of custody and child support, which was based on events that occurred following the first appeal. The parties agreed that they would have joint legal custody of Alex and that Deborah would have primary physical custody. The chancellor found that Roland’s monthly child support obligation by statute was $1,890 and that he would also be responsible for all of Alex’s college expenses, including any “sorority dues and fees, as well as her motor vehicle and insurance, health insurance, meal plan, and books.” Roland’s obligation to pay was premised upon Alex attending an instate college. The chancellor held that any difference in the amount between the $1,890 per month and the actual amount of money that Roland expends in a given month for Alex’s education should go directly to Alex to use for other college expenses. The chancellor also ordered that “[djuring the summer months, should Alex reside with [Deborah], then Roland will pay to [Deborah] as child support the pro rata share of $1,890 per month child support.”
¶ 9. Following the chancellor’s judgment after remand, numerous motions were filed by the parties. The chancellor held a five-day hearing on the pending motions and issued a final order on June 22, 2006. The chancellor denied Deborah’s petitions to modify Roland’s obligations for alimony and child support. The chancellor declined to award additional attorney’s fees to either party. The chancellor also denied Deborah’s petitions to hold Roland in contempt for failure to pay child support, *84 health and life insurance premiums, and life and automobile insurance premiums for Alex.
¶ 10. Additional facts will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Health Insurance Premium Rate

¶11. Deborah argues that the chancellor’s order requiring Roland to pay a fixed amount of $516 per month for her health insurance is in error. Deborah contends that Roland should be responsible for payment of any increases in the amount of her premium, rather than for only the fixed amount of $516.
¶ 12. In Deborah’s first appeal to this Court, we held that payments for medical insurance could be awarded as a type of alimony and remanded the case for the chancellor to consider the issue of Deborah’s medical insurance. In the judgment after remand, the chancellor ruled: “[Deborah] currently has enrolled in the Mississippi Insurance Risk Pool at a monthly premium of $516.00. Roland will pay this for [Deborah] as a part of his alimony obligation in addition to those sums previously designated as periodic alimony.” The chancellor further held that Roland was not responsible for any deductibles or co-payments related to Deborah’s future medical treatment.
¶ 13. Following the judgment after remand, Deborah’s insurance premium increased to $639 per month, but Roland refused to pay anything above the $516 per month. Deborah challenged Roland’s interpretation of the judgment by filing a motion to clarify. In his response, Roland insisted that the judgment made clear he was required to pay only $516 per month and no more. On June 2, 2006, the chancellor entered a ruling from the bench regarding the health insurance premium: “The judgment on remand ordered that Roland pay a set amount which was based on what the premium was at that time. He was never ordered to pay the insurance premium, per se.” The chancellor’s final order held that Roland was “required only to pay $516.00.”
¶ 14. Deborah argues that the judgment after remand is ambiguous because it is unclear whether Roland is required to pay the exact amount of her monthly insurance premium or the fixed amount of $516. She now calls upon this Court to interpret the meaning of the chancellor’s orders. In doing so, we conduct a de novo review. This Court has held:
[When] the resolution must be reached via the interpretation of a divorce judgment, our task is to view the terms of the document, find their legal meaning, and adjudge their enforceability. Webster v. Webster, 566 So.2d 214, 216 (Miss.1990). The familiar manifest error/substantial evidence rules have no application to such questions of law. Id. Consequently, our review is de novo, provided only that we read the entire settlement agreement/divorce judgment and in the best light possible, attributing to its provisions the most coherent and reasonable scheme they may yield. Id. However, we remain cognizant that our authority is circumscribed in that we may not provide through the pretense of interpretation that not directly or impliedly a part of the text we interpret. Id.
Meek v. Warren, 726 So.2d 1292, 1293-94(¶ 3) (Miss.Ct.App.1998). We must look to the judgment as a whole to determine the intent of the chancellor, as we have explained before:
“When questions of meaning arise” as to a judgment, “answers are sought by the *85 same rules of construction which appertain to other legal documents.” Estate of Stamper; Stamper v. Edwards, 607 So.2d 1141, 1145 (Miss.1992). “The determinative factor is the intent of the court ... as gathered ... from all parts of the judgment itself.” 46 Am.Jur.2d Judgments § 94 (1994). If the language of a judgment is unambiguous, construction is improper. Id.
Balius v. Gaines, 908 So.2d 791, 798(¶ 16) (Miss.Ct.App.2005).
¶ 15. One purpose for previously remanding this case was to allow the chancellor to consider the issue of medical insurance when determining the amount of Deborah’s periodic alimony. As noted above, the chancellor’s judgment after remand stated that “Roland will pay this [$516 monthly for insurance premiums] for [Deborah] as a part of his alimony obligation in addition to those sums previously designated as periodic alimony.” (Emphasis added). Reviewing the order de novo and looking to the order as a whole, we determine that the chancellor intended for Roland to pay Deborah $516 each month for her insurance premiums.
¶ 16. The order required Roland to pay for vehicle insurance and health insurance for his daughter, Alex. However, the chancellor did not set a specific amount per month for those premiums. Therefore, it is clear that Roland is to pay whatever those insurances cost — -including any increases in cost. Had the order been intended to do the same for Deborah’s medical insurance premiums, it logically would have simply stated that “Roland is required to pay for Deborah’s monthly insurance premiums.” Furthermore, the chancellor’s final order explicitly stated that Roland was to pay $516 monthly, rather than the fluctuating amount of Deborah’s actual premiums.
¶ 17. We also note that this is not a case where the parties entered into an agreement pursuant to an irreconcilable differences divorce. In such a case, the chancellor would have been called upon to interpret the meaning of a provision drafted by the parties themselves. In this case, the chancellor drafted the provision in dispute. Therefore, even if the provision were ambiguous, as the dissent finds, this Court knows of no one more competent to say what was meant by the provision than the chancellor who wrote it. Any ambiguity was resolved when the chancellor emphatically stated that he intended for Roland to pay only $516 per month for Deborah’s health insurance premiums.
¶ 18. Accordingly, we find that the chancellor’s original intent was to require Roland to pay the fixed amount of $516 per month. There is no merit to Deborah’s contention of error.

2. Compliance with Life Insurance Requirement

¶ 19. Deborah contends that Roland did not comply with the judgment after remand because he has not provided her with proof that he has maintained a life insurance policy in the amount of three hundred thousand dollars, with her as an irrevocable beneficiary. The chancellor ordered Roland to maintain the policy as a form of alimony, but he did not require Roland to regularly provide Deborah any evidence that the premiums were being paid.[2]
*86 ¶ 20. On this issue and the remaining assignments of error in this appeal, the scope of our review is limited by the substantial evidence/manifest error rule. Samples v. Davis, 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004). “[We] will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id. at 1064(¶ 9) (quoting Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996)).
¶ 21. In the chancellor’s judgment after remand, Roland was given the option of making Deborah a co-beneficiary of an existing Hartford policy along with Roland’s current wife, Sharon, or creating a separate policy for Deborah. The chancellor explained:
Roland reports ... that he has a $1,100,000.00 policy with Hartford naming Alex as beneficiary of $300,000.00, and Sharon as beneficiary of the remainder. The Court finds that Alex should be made the irrevocable beneficiary of that $300,000.00. Additionally, the Court finds that [Deborah] should be made the irrevocable beneficiary of an equal amount. Accordingly, the court finds that Roland should, and he hereby is, directed, as an additional item of alimony, to either obtain a life insurance policy on his life naming [Deborah] the irrevocable beneficiary thereof in the sum of not less than $300,000.00, or making [Deborah] an irrevocable beneficiary of the Hartford policy.
Roland testified that he named Deborah as a beneficiary of a three hundred thousand dollar policy in 2004 and that he has continued to make payments on the policy.
¶ 22. In a motion to reconsider, Deborah requested that the chancellor require Roland to give her proof of the life insurance policy. The chancellor declined to do so. The chancellor’s final order stated that Roland was not in contempt of any order requiring him to pay life insurance premiums for Deborah and Alex because there was unrebutted evidence that Roland paid the required life insurance premiums. Roland contends that the burden of proof was on Deborah to show that Roland did not maintain a life insurance policy with her as an irrevocable beneficiary.
¶ 23. A party can be held in contempt for noncompliance with a judgment issued by the chancellor. Miss.Code Ann. § 9-1-17 (Rev.2002). The failure of a pai'ty to comply with a divorce decree is prima facie evidence of contempt. Rainwater v. Rainwater, 236 Miss. 412, 421, 110 So.2d 608, 611 (1959). The burden of proof in a contempt action is on the mov-ant. Allred v. Allred, 735 So.2d 1064, 1068(¶ 15) (Miss.Ct.App.1999). Further, the contempt must be shown by clear and convincing evidence. Id. at 1067(¶ 10). When the moving party has shown that the respondent has failed to comply with the judgment, the burden shifts to the respondent to show that his “failure to comply with a court’s decree was not willful or intentional and without fault.” Prestwood v. Hambrick, 308 So.2d 82, 84 (Miss.1975).
¶ 24. The issue before us is whether the chancellor erred in finding that Roland had complied with the court’s previous order that mandated he maintain Deborah as an irrevocable beneficiary. Notably, it is undisputed that the order did not require that Roland provide proof of coverage to Deborah. It is impossible for Roland to be held in contempt for something he was never ordered to do in the first place. Furthermore, the Mississippi Rules of Civil Procedure allow Deborah to compel production of the requisite documents. To date, she has not done so.
*87 ¶ 25. Our rules provide Deborah with the necessary means to prove that Roland has not complied with the court’s order. Deborah has yet to provide any proof that Roland has not complied. As Deborah was the party seeking a finding of contempt, the burden was on her to prove Roland’s non-compliance. Therefore, the court did not err in declining to hold Roland in contempt, and this contention of error is without merit.

3. Child Stippoii Compliance

¶ 26. Deborah claims that Roland should have been held in contempt for failing to meet his child support obligations. Specifically, she argues that the child support obligation in the chancellor’s order does not clearly set out Roland’s responsibility and that, “to the extent that Roland’s child support obligations can be established from the chancellor’s orders, there is insufficient evidence in the record to support his finding that Roland exceeded his obligations....”
¶ 27. In the judgment after remand, the chancellor found that Roland’s statutory amount of child support equaled $1,890 per month. Because Roland’s income exceeded fifty thousand dollars per year, the chancellor also found that it was appropriate to deviate from the statutory amount and require Roland to pay for “100% of the college expenses of his child, based upon her attending an in-state institution, including sorority dues and fees, as well as her vehicle and insurance, health insurance, meal plan and books.”
¶ 28. However, the chancellor did not award these educational expenses in addition to the statutory amount but, instead, allowed Roland to subtract any amounts he expended for Alex’s education from the statutorily-required $1,890 per month. The chancellor found that:
Alex shall be responsible for providing her father with the necessary tuition and other college costs and expenses in a timely manner, and Roland shall have the option of paying the university directly or paying Alex. The difference, if any, between what Roland expends for Alex’s education and this $1,890.00, shall be paid to Alex to defray other college expenses. During the summer months, should Alex reside with [Deborah], then Roland will pay to [Deborah] as child support the pro rata share of $1,890.00 per month child support.
¶ 29. For the 2004-2005 school year, Roland made these educational payments directly to the university. During the 2005-2006 school year, pursuant to a motion to reconsider filed by Roland, the chancellor allowed Roland to make his child support payments in two semi-annual installments of $11,340 paid directly to Deborah, leaving Deborah responsible for any of Alex’s educational expenses above that amount. Deborah argues that the chancellor’s award of child support is ambiguous and allows Roland to dictate how much he pays her in child support.
¶ 30. When asked by his attorney whether he paid Deborah child support over the summer, Roland responded: “In the first year, I did. I paid her $303 a month for three months.” When asked how he arrived at that figure, Roland explained that he:
estimated the [annual cost of Alex’s school expenses] and told [Deborah] that [he] would adjust it up, if necessary, at the end of the year. [He] calculated what it would cost for these items that [he] was paying that was [sic] counted as child support, determined that left [after subtracting the total from $22, 680, the statutorily-required child support] would be $303 for three months, [and] paid [Deborah] that amount.
*88 ¶ 31. Deborah notes that even Roland’s attorney had a different interpretation of the chancellor’s order. Regarding the “pro rata” language of the judgment after remand, Roland’s attorney stated in a letter:
During the summer months when Alex is not in college, when she resides with [Deborah], then this $1,890 per month shall be paid to [Deborah] for each month that Alex stays with [Deborah], If Alex stays with [Deborah] for a portion of the month, then this sum shall be prorated based on the [fraction] of the month in which Alex stays with [Deborah].
Deborah argues that:
Roland’s interpretation ... merely involves subtracting the monthly child support owed from an estimated amount of money he expected to spend, without any reference to the time Alex actually stayed with her mother, giving him carte blanche to claim whatever expenditures he desired against the support payable to [Deborah] during the summer months as college expenses, just as he could during the months Alex was in school.
¶ 32. “In a contempt action involving unpaid child support, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made.” Fancher v. Pell, 831 So.2d 1137, 1143(¶ 30) (Miss.2002) (citing Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989)). The burden then shifts to the paying party to prove a defense by clear and convincing evidence. Id. “Whether a party is in contempt is left to the chancellor’s substantial discretion.” Id. (citing Shelton v. Shelton, 653 So.2d 283, 286 (Miss.1995)).
¶ 33. The chancellor’s order in this case makes it virtually impossible for Roland to be held in contempt, even if Deborah were to receive no child support payments at all. According to Roland’s own testimony, he estimated what his costs for Alex’s education would be and gave Deborah what was left over during the summer months. Thus, Roland was able to determine how much he would spend on Alex’s education. The more he spent, the less he would have to pay Deborah as child support.
¶ 34. The Mississippi Supreme Court “has held that although ‘college expenses are not technically “child support,” a parent may be ordered by the court to pay them.’ ” Id. at 1141(1123) (quoting Lawrence v. Lawrence, 574 So.2d 1376, 1382 (Miss.1991)). However, payments toward education are seldom used to offset child support “as they do not diminish the child’s need for food, clothing and shelter.” Id. at 1142(¶ 23) (quoting Varner v. Varner, 588 So.2d 428, 435 (Miss.1991)). Here, the record shows that Alex lives with Deborah when she is home from school during the summer and various weekends throughout the school year. Thus, Deborah must maintain the family home so that it is available when Alex returns home from school. Throughout the year when Alex is not at school, and especially during the summer months, Deborah is responsible for food, clothing, and shelter for Alex.
¶ 35. The structure of the chancellor’s child support order allows Roland to pay Deborah far less than the statutory child support of $1,890 per month during the summer. We find this to be in error and reverse and remand this issue for the chancellor to reconsider the appropriate amount of child support that should be paid, consistent with the terms of this opinion.

U. Retroactive Modification of Child Support

¶ 36. Deborah next contends that the chancellor abused his discretion by *89 denying a retroactive modification of child support. Specifically, she claims that the chancellor denied the request based on the fact that Alex had reached the age of twenty-one at the time of the hearing and that all court-ordered child support had thus ceased. Since Alex was under the age of twenty-one at the time Deborah filed for modification of child support, she argues that the chancellor’s denial was in error.
¶ 37. “To obtain a modification in child support payments, there must be a ‘substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified.’ ” McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994) (quoting Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992)). To determine whether a material change has occurred, courts examine the following factors: (1) increased needs of older children; (2) an increase in expenses; (3) inflation; (4) a child’s health and special medical or psychological needs; (5) the parties’ relative financial condition and earning capacity; (6) the health and special needs of the parents; (7) the payor’s necessary living expenses; (8) each party’s tax liability; (9) one party’s free use of a residence, furnishings, or automobile; and (10) any other relevant facts and circumstances. See Tedford v. Dempsey, 437 So.2d 410, 418-22 (Miss.1983).
¶ 38. In the chancellor’s final order, he found that:
There was no showing of a substantial and material change in circumstances to support a claim for increased child support or alimony. [Alex] is now over 21 years of age, and any further Court-ordered child support has terminated. What Mr. Weeks chooses to do regarding child support in the future is a matter for his sole discretion.
Deborah argues that the chancellor disregarded the evidence of Alex’s increased expenses and focused solely on the fact that Alex had already reached the age of twenty-one by the time of the hearing.
¶39. The order mentions that child support ended once Alex reached age twenty-one, but we do not find, as Deborah argues, that the chancellor disregarded the evidence before him and based his decision solely on Alex’s age. Furthermore, a chancellor is required to make specific findings only when he deviates from the statutory guidelines. See Miss.Code Ann. § 43-19-101(2) (Rev.2004); Knutson v. Knutson, 704 So.2d 1331, 1335 (¶¶ 25-27) (Miss.1997). The chancellor did not specifically list the factors he considered to determine whether a substantial change in circumstances existed, and his order does not state that the basis of that decision was Alex’s age at the time of the hearing. Additionally, Deborah did not request findings of fact and conclusions of law, as was her option under Rule 52 of the Mississippi Rules of Civil Procedure. See Crayton v. Burley, 952 So.2d 957, 959(¶ 9) (Miss.Ct.App.2006).
¶ 40. It was within the chancellor’s discretion to deny a retroactive increase in the child support payments. We do not find that the chancellor’s ruling constitutes manifest error or an abuse of his discretion. Therefore, this assertion of error is without merit.

5. Refusal to Modify Alimony

¶ 41. Deborah next claims that the chancellor erred when he refused to modify the previous award of three thousand dollars per month in alimony. Specifically, she claims that changes arising subsequent to the chancellor’s judgment after remand have made the award inadequate, thus creating a need for modification. However, *90 the chancellor found that there was no substantial or material change in circumstances to require a modification. Deborah states that it was an abuse of the chancellor’s discretion to disregard changes that occurred after the hearing on remand and to not re-examine the factors found in Armstrong v. Armstwng, 618 So.2d 1278, 1280 (Miss.1993) before denying her petition to modify. She asserts that the chancellor’s denial was based on his incorrect factual determinations regarding her health, ability to work, and ability to make substantial withdrawals from a 401 (k) savings plan. In the interest of thoroughness, we address each of these areas below in detail.
a. Deborah’s Health
¶ 42. In Deborah’s first appeal to this Court, we found that the testimony concerning her poor health and large medical bills was uncontradicted. That was one of the reasons we remanded the case with instructions for the chancellor to award Deborah periodic alimony. At the hearing after remand, Deborah again testified about her numerous medical problems and about the cost of insurance and prescription medication. In the judgment after remand, the chancellor recognized the evidence regarding Deborah’s many medical expenses, but also found that Deborah “had no medical expenses that were not covered by insurance.”
¶ 43. Accordingly, the chancellor held that Roland should maintain Deborah’s medical insurance as part of alimony, but he did not award any medical expenses above the amount of the monthly insurance premium. The chancellor ruled:
[Deborah] has put on no proof of a need for future medical treatment that this Court finds convincing. To require Roland to pay for her deductibles and co-payments and other non-covered expenses would be opening a Pandora’s Box. To require [Deborah] to shoulder that responsibility out of her alimony would be the only way that a cap on such expenses could be maintained. The Court will not require Roland to make such payments.
Deborah then filed a petition to modify the alimony award. After the hearing, the chancellor found that there had been no substantial change in circumstances and denied the petition for modification.
¶ 44. The Mississippi Supreme Court has held:
To justify changing or modifying an original divorce decree, there must be a material or substantial change in the circumstances of the parties.... The material or substantial change is relative only to the after-arising circumstances of the parties to the original decree. This change, moreover, must also be one that could not have been anticipated, by the parties at the time of the original decree.
Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990) (citations omitted) (emphasis added).
¶ 45. At the time the judgment after remand was entered, Deborah’s extensive health problems were known by both parties. In fact, in the chancellor’s analysis of Deborah’s health under the Armstrong factors, he listed fifteen different ailments that Deborah claimed to suffer from at that time, and he also listed three of Deborah’s most recent surgical procedures. Deborah now argues that the progression of her existing health problems and the additional problems of asthma and the Epstein-Barr virus warrant modification of alimony and a re-examination of the Armstrong factors.
¶ 46. We do not find this argument convincing. With the extensive testimony *91 concerning Deborah’s medical problems and the state of her health before the judgment after remand was entered, we cannot say that the increased expenses due to the progression of these problems was in any way unforeseeable by the parties. Further, the addition of asthma and the Epstein-Barr virus to a long list of other ailments was not unforeseeable. We have limited review of the chancellor’s finding that there was no substantial change in circumstances, and we do not find that his decision constitutes manifest error or an abuse of discretion. This contention of error is without merit.

b. Deborah’s Ability to Work

¶ 47. Deborah contends that the chancellor abused his discretion by finding that she failed to prove her inability to work. She argues that the chancellor’s reliance on a finding by the Social Security Administration that she was not disabled was an abuse of discretion.
¶ 48. In the chancellor’s final order denying Deborah’s petition to modify alimony, the chancellor found that:
Mrs. Weeks claimed that her medical condition kept her from working, yet she introduced no medical proof of her inability to work. Mrs. Weeks introduced documentary evidence from the Social Security Administration showing she had been denied disability benefits for two reasons: she teas not medically disabled; and she did not have enough years of employment.
(Emphasis added). Deborah argues that this finding ignores the undisputed testimony about her health and medical expenses and misconstrues the evidence regarding social security disability benefits.
¶ 49. Deborah is correct that the chancellor misconstrued the evidence regarding her social security claim. The evidence shows only that the Social Security Administration determined Deborah was not disabled under its rules as of December 31, 1984. The statement had no bearing on her ability to work at the time of the chancellor’s order.
¶ 50. However, this does not change the chancellor’s finding that Deborah did not produce any proof of her inability to work. She produced evidence of the various medical problems that she has experienced, but she did not show proof that those problems had created an inability to work. This finding of fact by the chancellor was not clearly erroneous; thus, this issue has no merit.
c. Deborah’s Ability to Make Withdrawals from the Jf01(k) Savings Plan
¶ 51. Deborah further argues that the chancellor abused his discretion in finding that Deborah had the ability to make substantial monthly withdrawals from the 401 (k) savings plan. She claims to have new evidence that proves she cannot make the withdrawals contemplated by the chancellor in his judgment after remand. Thus, Deborah contends that there has been a material change in circumstance that would allow the chancellor to modify his alimony award.
¶ 52. The chancellor analyzed the Ann-strong factors in his judgment after remand. Under the factor titled “income and expenses of the parties,” the chancellor found that Deborah received a 401 (k) worth approximately three hundred eighty-two thousand dollars in the property settlement following the divorce. The chancellor also found that, even though Deborah wished to save the money in the 401 (k) for retirement, testimony proved that she could withdraw $6,366.67 per month from the account without penalty.
*92 ¶ 53. Following the judgment on remand, Deborah learned that the withdrawal mentioned in the order is not an option for her because she is not an active employee with the company. She notified the chancellor of this information in her motion to clarify and also testified to this during the hearing.
¶ 54. The chancellor does not mention this new evidence in his final order. The order simply denies Deborah’s motion to modify alimony based on his finding that there was no showing of a substantial and material change in circumstances. To qualify as a substantial change, this new information must have not been anticipated by the parties at the time of the judgment after remand. Tingle, 573 So.2d at 1391.
¶ 55. Deborah states in her brief that, after the judgment after remand, she “made further inquiry and subsequently learned that the option to make substantial withdrawals as contemplated by the chancellor was not available to her since she was not an active Knight-Ridder employee.” There is no evidence presented as to why she did not inquire about her ability to withdraw the money before the entry of the judgment after remand. Indeed, she filed her motion to clarify just ten months later when she realized that she could not make the withdrawals. It is not clear to this Court that this information is a result of circumstances which occurred after the judgment after remand, or whether it is a fact that should have been reasonably anticipated by the parties at the time the judgment was entered. See Morris v. Morris, 541 So.2d 1040, 1043 (Miss.1989). Therefore, we do not find that the chancellor’s ruling that there had been no substantial change in circumstances was clearly erroneous or an abuse of his discretion. This issue is without merit.

6. Attorney’s Fees

¶ 56. Lastly, Deborah argues that the chancellor abused his discretion by denying her request for attorney’s fees for her appeal and the other proceedings following the remand of this case. She specifically contends that the chancellor’s finding that she had sufficient assets to pay her attorney’s fees was contrary to the evidence. Additionally, Deborah argues that it is contrary to the law to require her to borrow from her retirement funds to pay her attorney’s fees.
¶ 57. The chancellor made the following ruling regarding Deborah’s request for attorney’s fees:
The request for attorney[’s] fees for the appeal and for the post[-]appeal matters filed by [Deborah] Weeks is denied. She has a pot full of money. She has chosen not to touch her funds, but she has the funds available.
It is unclear from the chancellor’s ruling exactly to which funds he refers. Deborah has no assets other than those received in the distribution of the marital property— $382,564.01 from a 401 (k) plan and $681,140.75 from a retirement plan. She also has about $500,000 in insurance proceeds set aside to rebuild the family home destroyed by Hurricane Katrina.
¶ 58. The supreme court has held that an award of attorney’s fees is proper when a party otherwise will be forced to liquidate a portion of a retirement plan causing tax consequences and penalties for the early withdrawal. Wells v. Wells, 800 So.2d 1239, 1246 (¶¶ 16-18) (Miss.Ct.App.2001). The supreme court has also found that a wife need not liquidate her savings account to pay her attorney’s fees. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Disregarding Deborah’s retirement savings and the insurance proceeds saved to rebuild her home, the only funds remaining with which to pay her attorney’s fees *93 are her alimony and a small annuity. However, we have held that an award of attorney’s fees is appropriate, after examination of the McKee factors, when “the only liquid asset is the alimony award and the party seeking fees has otherwise demonstrated an inability to pay the fees.” Wells, 800 So.2d at 1246(¶ 17) (quoting East v. East, 775 So.2d 741, 747(¶ 16) (Miss.Ct.App.2000)).
¶ 59. Just as the chancellor failed to apply the McKee factors in Weeks I, here, the chancellor did not analyze the McKee factors before determining that Deborah was capable of paying her own attorney’s fees. Deborah has shown that the majority of her assets are comprised of retirement investments, and she has presented case law that refutes Roland’s argument that she should be required to liquidate her savings before an award of attorney’s fees may be granted. Accordingly, we will reverse the chancellor’s denial of attorney’s fees and remand this issue for an application of the McKee factors to determine whether Deborah is entitled to an award of attorney’s fees.
¶ 60. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TWO-THIRDS TO THE APPELLANT AND ONE-THIRD TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., AND ROBERTS, J., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CARLTON, J. ISHEE AND MAXWELL, JJ., NOT PARTICIPATING.

. Weeks v. Weeks, 832 So.2d 583 (Miss.Ct.App.2002) (Weeks I).

. In his response to Deborah's motion requesting proof of her status, Roland agreed to provide Deborah with proof of her status on his life insurance policy. However, the court declined to order Roland to do so in its order. Despite Roland’s acquiescence, this Court is bound by the chancellor's decision.