832 So.2d 583 (2002)
Deborah WEEKS, Appellant,
v.
Roland WEEKS, Appellee.
No. 2001-CA-01031-COA.
Court of Appeals of Mississippi.
September 17, 2002.
Rehearing Denied December 3, 2002.
*584 Aleita M. Sullivan, Mendenhall, attorney for appellant.
Henry Laird, Gulfport, Thomas W. Crockett, Jr., Jackson, attorneys for appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
BRANTLEY, J., for the court.
¶ 1. Deborah Weeks was granted a divorce on the ground of adultery in the Chancery Court of the First Judicial District of Harrison County. Deborah perfected this appeal seeking a review limited to the financial aspects of the divorce judgment. She contends that the chancellor abused his discretion in failing to grant a continuance and in dividing the marital property. In addition, she argues that the chancellor erred in failing to award adequate lump sum alimony, periodic alimony, medical insurance and attorney's fees. Finding several errors, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

FACTS
¶ 2. Roland and Deborah Weeks were married on September 16, 1978, the second marriage for both parties. Roland has two adult children from his previous marriage. Deborah has one adult child from her previous marriage who lived with Roland and Deborah during their marriage. One child was born during their marriage who was fifteen at the time of the divorce hearing. The parties separated in early 1992 resulting in Roland leaving the marital home. Their child remained with her mother until approximately one year prior to the divorce hearing at which time she moved in with her father.
*585 ¶ 3. Roland was sixty-four at the time of the hearing and the publisher of The Sun Herald, a newspaper in Gulfport. He is a college graduate from South Carolina who began working for The State Record, a newspaper in South Carolina in 1963 and transferred to the Mississippi paper in 1968 becoming the president of the company. The State Record sold the paper to Knight Ridder at which time Roland's title became that of publisher. Roland is required to retire from the newspaper at age sixty-five.
¶ 4. Deborah was fifty-one at the time of the hearing. She is a college graduate who worked in advertising prior to her marriage. She met Roland when she worked at The Sun Herald as an advertising account executive. Prior to their marriage, she stopped working at the newspaper and worked at a pharmaceutical company. However, she stopped working completely shortly after their marriage. At the hearing, Deborah and Roland testified that Deborah's health was poor. She claimed to have a degenerative nerve disease, Sjorgen's Syndrome, glaucoma and other eye problems, back and neck problems along with having had several surgeries for various problems.
¶ 5. Deborah was granted a divorce on the ground of adultery following an uncontested hearing on the issue of the divorce. The only issues raised on appeal deal with the financial aspects of the divorce. The chancellor found that there were no separate assets and entered an order after a hearing dividing all of the marital property.
¶ 6. Deborah was awarded the $360,000 marital home (with the remaining $18,000 debt), her $40,000 BMW, $40,000 in household furnishings, one-fourth of the 401(k) valued at $282,750, one-third of the defined benefit pension and retirement plan, including annual payments which had a cash value of $2,000,000 and $50,000 in cash. Deborah received approximately one third of the estate valued at $5,219,567.
¶ 7. Roland was awarded the remaining marital property of approximately two thirds of the estate including his home valued at $300,000, two planes and a hangar valued at $180,000, $40,000 in household goods, a limited partnership valued at $300,000 (receiving $30,000 in income per year), Knight Ridder and other stocks valued at $261,000 and all remaining assets. Under the retirement plan, Roland has various options and may choose a lump sum payment of $2,000,000 with $75,000 per year or periodic payments at various rates ranging from $228,000 to $308,000.

DISCUSSION OF ISSUES
I. WHETHER THE CHANCELLOR ERRED IN DENYING THE MOTION FOR A CONTINUANCE.
¶ 8. On September 28, 2000, three weeks prior to trial, Deborah filed a motion for continuance and to compel discovery. The chancellor, who later recused himself, denied the continuance, but did grant the order to compel discovery. The trial began, with a new chancellor and the motion was not renewed, but mentioned near the end of the trial. Deborah argues that the chancellor erred in failing to grant this continuance. Due to the failure to grant a continuance, Deborah maintains that she was unable to obtain complete discovery and ascertain what happened to some of the assets.
¶ 9. The decision to grant or deny a motion for a continuance is within the discretion of the judge and will not be reversed unless that discretion has been abused. Dew v. Langford, 666 So.2d 739, 746 (Miss.1995). Prejudice must result from the denial in order to have that decision *586 reversed. Id. Here, the case had been pending for over a year and Deborah had changed attorneys several times prior to trial. Instead of renewing the motion, Deborah proceeded with the trial. The continuance was not mentioned until near the end of the trial; however, the motion was not renewed then either. Deborah claims she did not have time to go through all of the information gathered from discovery and needs additional discovery to trace some assets.
¶ 10. However, we cannot find that she was prejudiced in any form. The chancellor was aware that certain money could not be traced. Roland testified that he used the money to live on during the separation at which time he gave Deborah his pay checks from the newspaper. The chancellor was also aware that some of the money was lost in investments. From the chancellor's order, it is clear that he took the money in question into account in making his decision. No prejudice resulted; therefore, this issue is without merit.
II. WHETHER THE CHANCELLOR ERRED BY FAILING TO MAKE AN EQUITABLE DIVISION OF THE MARITAL PROPERTY.
¶ 11. Deborah argues that the chancellor erred in failing to make an equitable division of the marital property. The division of the property, as stated in detail above, is approximately one third to Deborah and two thirds to Roland. A chancellor's findings will not be reversed unless the decision is manifestly wrong, clearly erroneous or resulted from an abuse of discretion. Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994).
¶ 12. In order to determine an equitable division of property, the chancellor must first determine which assets were marital, their value and follow the appropriate factors in distributing the assets. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). Here, the chancellor addressed each of the Ferguson factors. Deborah argues that the chancellor did not consider her non-economic contributions to the accumulation of marital property.
¶ 13. The Mississippi Supreme Court has recognized that a spouse that stays at home to care for the family and contribute to the career of the other spouse without contributing to the family economically, still receives an equitable portion of the marital assets. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Here, the Weekses were married twenty-two years; however, the parties have led separate lives since 1992. Although Deborah testified that she cared for their daughter and entertained for Roland's business, Roland testified that Deborah harassed him at his job to the point that a restraining order had to be obtained along with extra security at the newspaper. Additionally, Deborah admitted to an affair around 1984 when she filed a motion, which was denied, for the determination of paternity for the Weekses's minor child. The chancellor found that neither party contributed to the stability of the marriage. From the evidence presented at the hearing, we cannot find any error in this determination, nor the chancellors's distribution of the marital property.
III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD ADEQUATE LUMP SUM ALIMONY.
¶ 14. Deborah argues that the chancellor erred in awarding her inadequate lump sum alimony. Although, the chancellor denied alimony, he did order Roland to pay Deborah $50,000 in cash within five days of the entry of judgment. This was not lump sum alimony, but part of the division of marital assets.
*587 ¶ 15. The decision to award lump sum alimony is within the discretion of the chancellor and will not be reversed unless that discretion was abused. McEachern v. McEachern, 605 So.2d 809, 814 (Miss.1992). In order to award lump sum alimony, the chancellor must look at the substantial contribution to the accumulation of total wealth, length of the marriage, the inadequacy of the separate estate and the financial security of the spouse. Flechas v. Flechas, 791 So.2d 295, 304(¶ 31) (Miss.Ct.App.2000) (citing Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988)). Here, we find no abuse of discretion in failing to award lump sum alimony; however, we will address periodic alimony as a separate issue.
IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD PERIODIC ALIMONY.
¶ 16. Deborah argues that the chancellor erred in failing to award her periodic alimony. An award of alimony is within the discretion of the chancellor and will not be reversed unless it resulted in manifest error or an abuse of discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion." Id.
¶ 17. In Armstrong, the Mississippi Supreme Court set forth twelve factors to be considered in awarding alimony. Id. These factors include: income and expenses, health and earning capacity, needs, obligations, length of marriage, presence of minor children, age, standard of living, tax consequences, fault and any other equitable factors. Id. Although, an on-therecord analysis of the Armstrong factors are helpful in appellate review, the lack of that analysis does not require reversal, unless manifest error has resulted. Godwin v. Godwin, 758 So.2d 384, 387 (¶¶ 10-11) (Miss.1999).
¶ 18. Here, the chancellor denied any award of alimony without an on-therecord consideration of the Armstrong factors. We find this failure to consider the Armstrong factors to be a manifest error. The gross disparity in the estates of both parties calls for a consideration of whether alimony is appropriate. The chancellor found that Deborah was adequately provided for in the division of assets; however, we find that not to be the case. There was undisputed evidence concerning the state of Deborah's health which was set forth in the recital of facts. Although, the chancellor did not place much credit on Deborah's ill health considering her request for expenses to care for a horse and jet ski. However, no one questioned or contradicted Deborah's testimony concerning her poor health and large medical bills. Deborah has not worked for the past twenty-two years and was fifty-one at the time of the hearing enjoying a substantial standard of living throughout the twenty-two years of marriage.
¶ 19. Additionally, Roland left the marriage in 1992 due to an affair. Further, although, the chancellor found that each party wasted assets, there is a large amount of money unaccounted for which Roland had access to, not Deborah. Deborah has no separate estate or income outside of the division of the marital property. We find that the chancellor erred in failing to award periodic alimony.
¶ 20. "The wife is entitled to support corresponding to her rank and condition in life, and the estate of her husband." Tutor v. Tutor, 494 So.2d 362 (Miss.1986) (citing Jenkins v. Jenkins, 278 So.2d 446, 449-50 (Miss.1973)). In accordance with Tutor and Armstrong, Deborah is entitled *588 to continue living in the same standard of living as she has grown accustomed to during the course of her twenty-two year marriage. Deborah maintained the home during their marriage and after their separation for the benefit of their daughter until one year prior to the divorce hearing.
¶ 21. In the discussion on the division of property, the chancellor placed great weight on the need to divide the assets in such a way to prevent future friction between the couple. However, due to the fact that they have a child, contact and possible friction between the couple will be inevitable. Taking all the evidence into consideration, we must conclude that the chancellor erred in failing to award Deborah any alimony. Therefore, we reverse and remand with instructions to the chancellor to award periodic alimony to Deborah.
V. WHETHER THE CHANCELLOR ERRED IN FAILING TO ORDER ROLAND TO PROVIDE DEBORAH WITH MEDICAL INSURANCE.
¶ 22. Deborah contends that the chancellor erred in failing to order Roland to provide her with medical insurance. The chancellor does have the ability to order medical insurance as a type of alimony. Driste v. Driste, 738 So.2d 763, 766(¶ 11) (Miss.Ct.App.1998). As we have already found that the chancellor erred in failing to award any periodic alimony, we also reverse the chancellor's decision not to order Roland to provide medical insurance for Deborah. Therefore, for the same reason that we set forth above, in reversing the chancellor's decision for periodic alimony, we reverse and remand the issue of medical insurance to the chancellor for reconsideration when determining an appropriate periodic alimony award.
VI. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD ATTORNEY'S FEES TO DEBORAH.
¶ 23. Deborah's final assignment of error is that the chancellor erred in failing to award her attorney's fees. "Generally the award of attorney fees in a divorce case is left to the discretion of the trial court." Burnham-Steptoe v. Steptoe, 755 So.2d 1225, 1235(¶ 36) (Miss.Ct.App. 1999) (quoting Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988)). An appellate court is "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees." Geiger v. Geiger, 530 So.2d 185, 187 (Miss.1988). Additionally, the Court maintains a "general rule that where `a party is financially able to pay her attorney, an award of attorney's fees is not appropriate.'" Id. (quoting Martin v. Martin, 566 So.2d 704 (Miss.1990)).
¶ 24. The Mississippi Supreme Court reversed a chancellor's denial of attorney's fees when the evidence was sufficient for the chancellor to determine whether an award of attorney's fees were necessary by considering the McKee factors. Nix v. Nix, 790 So.2d 198, 200-01(¶ 7) (Miss.2001) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)). Here, the evidence presented included Deborah's testimony concerning her inability to pay and the bills were introduced into evidence. Although, the chancellor stated he would determine the issue of attorney's fees, he failed to set forth any reason for denying attorney's fees with reference to the McKee factors. For the same reasons that we are reversing the issue of periodic alimony, we reverse the chancellor's denial of attorney's fees and the case is remanded for a determination based upon the existing record and by applying the McKee factors of whether an award of attorney's fees is warranted.
*589 ¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. THOMAS, J., NOT PARTICIPATING.