# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00807-COA

ROLAND WEEKS                              APPELLANT/CROSS-APPELLEE

v.

DEBORAH W. WEEKS                       APPELLEE/CROSS-APPELLANT

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2013 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS W. CROCKETT JR. |
| | HENRY LAIRD |
| ATTORNEYS FOR APPELLEE: | ANDREW AUSTIN CLARK |
| | RUSSELL S. GILL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DENIED DOWNWARD MODIFICATION OF ALIMONY; AWARDED BACK CHILD SUPPORT; DENIED ATTORNEY'S FEES; AND DENIED MOTION TO SET ASIDE PRIOR ORDER DENYING UPWARD MODIFICATION OF ALIMONY |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL: 03/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. Roland and Deborah Weeks were married in 1978, and they separated in 1992.

Litigation has continued since their divorce in 2001. In *Weeks v. Weeks*, 832 So. 2d 583

(Miss. Ct. App. 2002), this Court found that the chancery court had erred in not awarding Deborah alimony after she had been given about a third of their considerable marital assets. The chancery court subsequently ordered Roland to pay approximately $3,900 per month, between periodic alimony, health insurance, and life insurance. In *Weeks v. Weeks*, 29 So. 3d 80 (Miss. Ct. App. 2009) (*Weeks II*), we largely affirmed the subsequent judgment, but remanded again for the chancellor to reconsider aspects of the child support and attorney's fee awards.

¶2.    The instant appeal arises from several motions: Roland's March 2012 motion to reduce his alimony obligation; Deborah's January 2013 motion to pursue the child support and attorney's fees previously remanded; and Deborah's August 2013 motion to set aside a 2006 order denying an upward modification of alimony, which she claimed was induced by a fraud on the court.

¶3.    The chancery court denied Roland's motion to reduce his alimony obligation, finding that both his and Deborah's health and assets had declined as they aged, but that Roland was still capable of paying the award. He appeals. The chancellor awarded back child support to Deborah, but denied her request for attorney's fees, which he found to be both unreasonable and within her ability to pay. The judge also denied Deborah's motion to set aside the 2006 order. Deborah cross-appeals. We agree with Deborah that the chancellor should have awarded her interest on the unpaid child support and that the chancellor erred in finding she was able to pay that portion of her attorney's fees accumulated prior to *Weeks*

2

*II.* This Court decided in *Weeks II* that she was unable to pay them; we had remanded only for the chancery court to consider the *McKee* factors. *Weeks II,* 29 So. 3d at 92-93 (¶¶58-59); *see also McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). We again remand for the chancery court to determine the appropriate amount of those attorney's fees. We otherwise affirm the judgment.

**STANDARD OF REVIEW**

¶4.     "When [an appellate court] reviews a chancellor's decision in a case involving divorce and all related issues, [the court's] scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007). A chancellor's factual findings will not be disturbed unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011). As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Ferrara v. Walters*, 919 So. 2d 876, 881 (¶8) (Miss. 2005) (citing *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990)). Questions of law, on the other hand, are reviewed de novo. *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011).

**DISCUSSION**

3

### 1. Downward Modification of Alimony

¶5.     Roland contends that the chancellor erred in refusing to relieve him of some or all of his alimony and associated obligations to Deborah, which totaled about $3,900 per month, and would apparently increase somewhat in the future with the cost of his life insurance.

¶6.     In deciding whether to modify alimony, the chancellor must consider the familiar *Armstrong* factors, "comparing the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree." *Steiner v. Steiner*, 788 So. 2d 771, 776 (¶16) (Miss. 2001) (citing *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)).

¶7.     The chancellor found that although both parties had diminishing assets, were suffering from declining health as they aged, and were no longer able to work, Roland continued to have sufficient income from his pensions and Social Security – approximately $14,000 per month – to pay the alimony, while Deborah's income from non-alimony sources was just $1,200 per month. The chancellor did not make specific findings regarding the value of the parties' estates, and so on appeal, Roland and Deborah each claim poverty while accusing the other of hiding substantial assets. They also debate whether Roland was required to prove a material change of circumstances, as the chancellor had included language in the alimony order to the effect that it would be reexamined once Deborah reached an age to withdraw some of her retirement funds without penalty. We find that regardless of whether Roland had to prove a material change of circumstances, the chancellor had sufficient

4

evidence to deny his request for modification. Roland's advancing age and declining health were not unexpected, nor did they impact his continuing retirement income, which greatly exceeded Deborah's. Roland continues to be in a significantly better financial position even after the alimony. We find no abuse of discretion in the denial of Roland's motion to modify alimony.

### 2. Back Child Support

¶8.     At issue are the child support amounts owed for the final two years prior to the Weeks' daughter reaching the age of majority. At the time, the daughter was attending college out of state. Roland made significantly more than the then-$50,000 limit for the mandatory application of the child support guidelines. Initially, the chancellor had ordered Roland to pay the percentage of his income specified by the guidelines (fourteen percent or $1,890) in the form of expenses related to the child's college education, including tuition, transportation, food, health insurance, and the like. Roland would pay the difference, if any, directly to the child for living expenses not covered directly by the award. During the summer, if the daughter resided with Deborah, Roland would instead pay Deborah the "pro rata share" of the $1,890. Exactly what this meant was a point of contention, with the chancellor subsequently allowing Roland to offset the summer support with money he paid for the child's education. For the final year, the chancellor allowed Roland to pay Deborah the entire monthly amount, every month, minus the cost of the daughter's car insurance. But Deborah would have to pay the education expenses with that money.

¶9.     In *Weeks II*, this Court found that "[t]he structure of the chancellor's [interpretation of the] child support order allows Roland to pay Deborah far less than the statutory child support of $1,890 per month during the summer." *Weeks II*, 29 So. 3d at 87-88 (¶¶26-35). We found this to be error and reversed and remanded "this issue for the chancellor to reconsider the appropriate amount of child support that should be paid, consistent with the terms of this opinion." *Id.*

¶10.    On remand, the chancery court ordered Roland to pay Deborah $1,890 for each of the summer months, as direct child support, minus what Roland had already paid to her for those months.

¶11.    Roland argues that this was in error because he had exceeded the support obligation with money paid to the child directly – by paying her college expenses, which included things like food, clothing, and shelter. His arguments are brief and cursory, and they appear to be little more than an attempt to relitigate an issue we decided in *Weeks II*, where we held that Roland's paying his daughter's college expenses did not diminish Deborah's need to maintain the family home, for which child support was required. The child "live[d] with Deborah when she [was] home from school during the summer and various weekends throughout the school year." *Id.* at 88 (¶34). Roland's arguments on direct appeal are without merit.

¶12.    On cross-appeal, Deborah also seeks to relitigate issues we resolved in *Weeks II*. She contends that the chancellor should have found that Roland had failed to pay her child

6

support for the entire twenty-five-month period at issue. She further seeks a finding of contempt and attorney's fees, as well as interest for back child support.

¶13.    In *Weeks II*, we faulted the chancery court for allowing Roland to offset the summer child support payments with money he had spent on the daughter's education. But this concerned only the portion of the support Roland was required to pay to Deborah – for the summer months. While we did observe that Deborah would have to maintain the house throughout the year, we did not find that she was entitled to child support payments at the full guidelines percentage for every month throughout the year; the issue before this Court was whether Roland had complied with the original order. *See Weeks II*, 29 So. 3d at 87-88 (¶¶26-35). Separately, we found no error in the chancellor's refusal to retroactively modify the child support award. *Id.* at 88-89 (¶¶36-40).

¶14.    On the issue of interest, Deborah is correct that the chancery court should have awarded it, as is required for child support arrearages. *Ladner v. Logan*, 857 So. 2d 764, 772-73 (¶30) (Miss. 2003). As to contempt, it is true that failure to pay child support makes a prima facie case for contempt. *Fancher v. Pell*, 831 So. 2d 1137, 1143 (¶30) (Miss. 2002). But we noted in *Weeks II* that the ambiguity of the order made it "virtually impossible for Roland to be held in contempt." *Weeks II*, 29 So. 3d at 88 (¶32). Deborah has presented nothing new on that point, and so we find no error in the refusal to find Roland in contempt.

¶15.    We remand for the chancery court to award interest on the child support arrearages. Otherwise we affirm the chancery court's judgment on the child support issues.

### 3. Attorney's Fees

¶16.    On cross-appeal, Deborah argues that the chancellor erred in denying her motion for attorney's fees.  She contends that Roland should pay her legal fees since the divorce, in 2001, which she pegs at more than $311,000 – after adjustments for certain fees she concedes were unreasonable.

¶17.    The chancellor noted that Deborah admitted she had already paid the attorney's fees – or the vast majority of them.  The chancellor noted that Deborah had been awarded substantial assets, and he expressed doubt at her claims regarding the extent to which they had been diminished or offset by liabilities.  The chancellor noted that Deborah had been shuffling money around while rebuilding her home[1] to obscure her true assets.  The chancellor had the "firm conviction that neither [Deborah's Uniform Chancery Court Rule 8.05 disclosure] nor her testimony can be relied upon to show what her assets or her needs are, but it is clear that she has $900,000 in assets, considering the money she shows."

¶18.    In summary, the chancellor found that Deborah was able to pay her own attorney's fees. But in *Weeks II*, this Court concluded that Deborah was unable to pay her attorney's fees.  *Weeks II*, 29 So. 3d at 92-93 (¶¶56-59).  Our instructions on remand were for the chancery court to consider whether an award of attorney's fees was proper under the *McKee*

---

[1] The former marital home had been destroyed by Hurricane Katrina, and Deborah had received substantial money to rebuild it, which she claimed she had expended paying her attorneys.  She admitted that the replacement house was to be more valuable at about $700,000.

8

factors, i.e., whether and to what extent the fees sought by Deborah were reasonable – not whether she was able to pay them. *Id.* at 93 (¶59); *see also Upchurch Plumbing Inc. v. Greenwood Util. Comm'n*, 964 So. 2d 1100, 1114-15 (¶36) (Miss. 2007); *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). On remand, Deborah submitted detailed proof touching on all of the *McKee* factors. The chancellor clearly found that some of the fees Deborah requested were unreasonable, as Deborah had gone through at least twelve attorneys, who had charged "an inordinate amount of money for little courtroom time," largely due to the amount of work that had to be duplicated. But the chancellor did not make specific findings as to the reasonable amounts; and so we again remand for the chancery court to award attorney's fees in an amount it determines to be reasonable for Deborah's legal fees accumulated to the point addressed in our judgment in *Weeks II.*

¶19.    Our finding of Deborah's inability to pay reasonable attorney's fees accumulated prior to *Weeks II* is res judicata, but whether she is now able to pay the fees incurred since is a separate issue. This question was entrusted to the sound discretion of the chancellor. *Powell v. Powell*, 644 So. 2d 269, 276 (Miss. 1994). As the chancellor noted, Deborah's financial situation remains strong, and penalties associated with withdrawing from her substantial retirement accounts are no longer the same impediment they were at the time of *Weeks II.* *See Weeks II*, 29 So. 3d at 92-93 (¶58). As Deborah possesses significant liquid assets, we can find no abuse of discretion in the chancellor's finding that she is able to pay own her attorney's fees for representation since this Court last considered her circumstances.

9

Therefore, we affirm the judgment to the extent it denies attorney's fees accumulated since *Weeks II.*

### 4. Rule 60(b)(6) Motion

¶20. Deborah sought to set aside a 2006 order denying her an increase in alimony. She argued that Roland fraudulently misrepresented the value of an investment in an apartment complex. He had "estimated" it to be worth $200,000 in his Rule 8.05 statement, and he testified (with even more qualification) to the same value at trial. Deborah alleges that, the day before Roland's testimony, he had deposited a $300,000 return on the investment, and he had reported a $520,000 capital gain on the investment on his taxes for 2006. Roland testified at the hearing that he had qualified his statements of the investment's value and that he did not remember making the deposit. He denied that the handwriting on the deposit slip was his.

¶21. The chancellor found that Deborah had failed to show a fraud on the court, and he further found that she failed to bring her allegations in a timely fashion – the motion to set aside the judgment was filed more than seven years after Roland's alleged misrepresentations and not within the six-month limit for fraud on a party, nor within a reasonable time as required by Mississippi Rule of Civil Procedure 60(b)(6). The chancellor found that valuation of the investment had been a known issue at the 2006 hearing, and Roland's testimony there on cross-examination supports this finding. Regarding the value of this investment, Roland had testified: "I don't know exactly what [it is], but I believe I put down

10

$200,000. [It] may be worth more than that. I just don't know." Deborah offers no real explanation for the seven-year delay in filing the motion, and so we cannot find an abuse of discretion in the chancellor's finding that Deborah failed to bring her claim within a reasonable time as required by Rule 60(b)(6).

### 5. Content of Record

¶22. In her final issue, Deborah contends that because Roland was the first to file an appeal, he was required to pay for additional parts of the record that she designated. However, her argument on this point is cursory, and she fails to distinguish between portions of the record necessary for responding to issues raised by Roland in his appeal and those she designated as an appellant in her own right (i.e., the cross-appeal). *See* M.R.A.P. 10. Consequently we find that she has failed to demonstrate error on this point, and we deny relief.

¶23. **THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED ON DIRECT APPEAL AND AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, JAMES AND WILSON, JJ., CONCUR. ISHEE AND GREENLEE, JJ., NOT PARTICIPATING.**