# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00427-COA

ROLAND WEEKS                                                      APPELLANT

v.

DEBORAH W. WEEKS                                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2023 |
| TRIAL JUDGE: | HON. H. DAVID CLARK II |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | HENRY LAIRD |
| ATTORNEY FOR APPELLEE: | DEBORAH W. WEEKS (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 07/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     In 2020, Roland Weeks filed a motion with the Harrison County Chancery Court seeking to reduce his monthly alimony payment to his ex-wife, Deborah Weeks, because his retirement income had decreased.  The chancery court entered an order temporarily reducing the amount of alimony due to Deborah pending a final hearing on the issue.  In 2023, the chancery court denied Roland's motion, reinstated the original alimony award, and ordered Roland to pay Deborah $26,586 for those months in which he had paid the reduced amount.  Roland appeals the court's ruling.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Since 2001, Roland and Deborah Weeks have been involved in ongoing litigation over

various financial aspects of their divorce. In *Weeks v. Weeks* (*Weeks I*), 832 So. 2d 583, 588 (¶21) (Miss. Ct. App. 2002), our Court upheld the chancery court's division of assets but remanded the case for the court to award periodic alimony to Deborah. We also ordered the chancery court to consider on remand whether Roland should be required to pay for Deborah's medical insurance as part of the alimony. *Id*. at (¶22). Lastly, we instructed the court to determine whether Deborah was entitled to an award of attorney's fees using the factors found in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). *Id*. at (¶24). Years later, in *Weeks v. Weeks* (*Weeks II*), 29 So. 3d 80, 88-93 (¶¶35, 59-60) (Miss. Ct. App. 2009), we affirmed the chancery court's subsequent judgment in part, but we reversed and remanded in part for the chancellor to reconsider aspects of the awards for child support and attorney's fees. In 2016, the parties filed another appeal/cross-appeal in *Weeks v. Weeks* (*Weeks III*), 187 So. 3d 654 (Miss. Ct. App. 2016). We affirmed the chancery court's order denying Roland's motion to modify alimony and Deborah's request for attorney's fees that had accumulated since *Weeks II*. *Id*. at 658-60 (¶¶7, 19). We reversed and remanded in part "for the chancery court to award interest on the child support arrearages." *Id*. at 659 (¶15).

¶3.    This appeal originates from Roland's July 30, 2020 motion to modify the final divorce judgment and to eliminate his alimony payments to Deborah, "including paying any life insurance premium." Roland asserted in the motion:

> There have been material changes in the parties' circumstances, including the bankruptcy of Roland's former employer, The McClatchy Company, and the resulting drastic reduction in Roland's retirement benefits; the continued age and deteriorating health of Roland; his inability to earn an income and to pay alimony, including a life insurance premium; the increasing disparity in the sizes of the parties' estates as Roland's estate is now very small; his inability

2

to restructure debt; and his inability to meet his financial obligations. Roland filed a subsequent emergency motion on September 11, 2020, claiming that his monthly retirement pension of $5,903 from The McClatchy Company had been "eliminated" due to the company's bankruptcy.[1]

¶4.     Deborah filed a pro se motion to dismiss on October 2, 2020, arguing that "Roland has not proven an inability to pay [a]limony and [l]ife [i]nsurance" and seeking Roland's tax returns from the Internal Revenue Service (IRS).[2]  The chancery court entered an order on November 2, 2020, requiring Roland (and his wife Sharon Weeks) to authorize Deborah's receipt of their 2018 and 2019 tax returns from either their certified public accountant (CPA) Mike Guel, the IRS, or the Mississippi Department of Revenue.  The court temporarily reduced Roland's monthly alimony payment from $3,516 to $2,250 per month pending a final hearing.

¶5.     On September 1, 2021, Deborah filed a motion for contempt, citing Roland's failure to pay her health insurance premiums for eleven months, back child support, and her attorney's fees.  Deborah also asserted that Roland was in contempt of the court's order "[f]or not producing signed forms for both Roland and Sharon Weeks' tax returns from the IRS."  Roland responded, admitting he had not paid Deborah's court-ordered health insurance premiums for eleven months or her attorney's fees.  He claimed that he had

---

[1] The record shows The McClatchy Company filed for Chapter 11 bankruptcy on February 13, 2020.  Pension benefits were protected by the Pension Benefit Guaranty Corporation (PBGC).

[2] The Mississippi Supreme Court denied Deborah's pro se petition for permission to file an interlocutory appeal on March 1, 2021.

provided Deborah with his IRS tax returns[3] and his Rule 8.05 financial disclosure statement. *See* UCCR 8.05.

¶6. On February 9, 2022, Deborah filed an emergency motion to "eliminate" the court's November 2020 temporary order and to restore alimony, seeking back payment of alimony (plus interest) to October 2020. On April 6, 2022, the chancery court entered an order carrying forward Deborah's emergency motions and scheduling a hearing for July 27, 2022. The court instructed Roland to furnish to Deborah's attorney "a list of the documents she is requesting that [he] produce" and ordered Deborah "to fully cooperate with [Roland] in securing production of the documents which she request[ed] in preparation for the trial of this matter." Because Sharon was not a party to the action, the chancery court found that it lacked jurisdiction to order production of her income-tax returns.

¶7. Deborah filed a motion for contempt on June 3, 2022, because Roland had not produced any signed tax returns or 1099 forms; nor had he paid her health insurance premiums "for several years." At the July 27, 2022 hearing, Roland testified that he was unable to pay the court-ordered alimony because his retirement pay had been "cut in half" over two years prior. He said that his former retirement pay was "nine thousand before taxes," but after the company's bankruptcy proceedings, his pay had been reduced to "roughly six thousand."[4] Deborah objected to Roland's 2019-2021 tax returns that he submitted because they were not from the IRS. She further noted that the IRS had rejected

---

[3] Roland noted that his wife Sharon had refused to furnish her income-tax returns.

[4] His Rule 8.05 financial disclosure stated that he received $6,240 from pensions and retirement income.

4

her request for the records. Although Roland said that his CPA had prepared the returns, Deborah informed the chancery court that Roland and his CPA had produced tax returns in prior proceedings that were different from those sent to the IRS. The court, therefore, determined that Roland's copies from the CPA were "not the best evidence."

¶8. The chancery court entered its opinion and order on August 11, 2022. The court noted that when Roland was ordered to pay $3,516 in monthly periodic alimony to Deborah, "his monthly net income was $13,500.00." The court also had "yet to see the best evidence of a reduction in Roland's retirement income," noting the failed attempts to obtain Roland's tax returns that he filed with the IRS. The court concluded:

> **IF** Roland's retirement income has been reduced by half, as he has testified, equaling a reduction in his monthly income of approximately $7,000.00, that reduction, in the opinion of this court, would certainly constitute a substantial and material change in circumstances since the entry of the Judgment on Remand. In addition, in the opinion of this court, that substantial and material reduction in income could not have been reasonably anticipated by either party. As such, in the opinion of this Court, **IF** Roland's retirement income has been reduced by half, he could be entitled to a reduction in the amount of alimony due and owing to Deborah.

The order set the motion to modify alimony for a later hearing at which time the only additional evidence to be received would be two items:

> i. A copy of Roland's official federal income tax returns (Form 1040) for the years 2020 and 2021 to be requested by Roland and produced by the IRS;
>
> and
>
> ii. Sworn documentation from the [PBGC] substantiating Roland's claim that his retirement income has been reduced since January 2020.

After a hearing, the court entered its final judgment on January 19, 2023, denying and

dismissing Roland's motion to modify the final judgment of divorce and to eliminate alimony. The court determined that Roland had "failed to meet his burden of proof to establish, by a preponderance of the evidence, that he has suffered a substantial and material, unexpected loss of income since the entry of the last order of this court." The remaining matters were reset for a hearing on March 13, 2023.

¶9. Roland filed a motion for a new trial under Rules 59 and 60 of the Mississippi Rules of Civil Procedure, claiming that since the latest hearing on January 17, 2023, he had "obtained evidence of his inability to pay by virtue of receiving his long-requested documentation from the [IRS] on his 2020 and 2021 federal income tax returns." In actuality, however, Roland produced only "a tax return transcript," not the certified returns requested. He also attached two letters from PBGC dated August 2022 and October 2022 that stated that Roland's monthly gross pension income was $6,239.90.

¶10. At the March 13, 2023 hearing on the outstanding motions, the court noted that although Roland had been instructed to produce official tax returns from the IRS, those signed returns had not been produced. Because the documentation presented by Roland "does not substantiate any reduction," the court denied Roland's motion for a new trial, finding no "intervening change in controlling law, . . . [no] newly discovered evidence, or a need to correct a clear error of law, or to prevent manifest injustice." Deborah agreed to waive the issues raised in her contempt motion, but she asked that Roland be ordered to repay the amount of alimony that had been reduced by the court's prior order on November 3,

2020.[5] Deborah filed a motion on March 20, 2023, asking the court (1) to award her back alimony in the amount of $26,250 and (2) to order Roland (i) to increase his life insurance policy amount to $515,000 and (ii) to pay her attorney's fees. On March 21, Roland submitted a response, asking the chancery court to deny Deborah's "unnoticed request to increase alimony."

¶11. The chancery court entered its final judgment on the remaining issues on March 22, 2023, finding the court's November 2020 order had "improvidently granted" the relief Roland requested regarding alimony. Citing Deborah's prior request for back alimony from her February 2022 emergency motion, the court further determined "that the alimony payments deferred/reduced by that order should be restored to [Deborah]" and entered a judgment against Roland for $26,586.[6] Roland appeals the chancery court's denial of his motion for a new trial[7] and the March 22, 2023 final judgment, which restored the alimony payments to Deborah and required Roland to pay retroactive alimony for those months during which alimony had been reduced.

---

[5] Because Roland had resumed paying Deborah $3,516 in alimony on August 1, 2022, the relevant time period requested was from November 2020 to July 2022.

[6] Because the court had addressed the issue of retroactive alimony through Deborah's February 2022 emergency motion, the court ruled that Deborah's March 2023 motion seeking back alimony and attorney's fees "should be dismissed without consideration by the court, the court having previously completed the trial of this matter and having taken the remaining issues under advisement to be ruled on at a later date."

[7] Although Roland's notice of appeal refers to the chancery court's order denying his motion for a new trial, he has made no substantive arguments, nor cited any pertinent caselaw, with regard to that specific order. We therefore find any arguments related to the court's ruling to deny his motion for a new trial are waived.

**STANDARD OF REVIEW**

¶12. Our "review in domestic-relations matters is strictly limited." *Bolivar v. Bolivar*, 378 So. 3d 433, 437 (¶18) (Miss. Ct. App. 2024) (quoting *Curry v. Frazier*, 119 So. 3d 362, 365 (¶8) (Miss. Ct. App. 2013)). "We will not disturb the chancery court's findings if 'supported by substantial evidence unless the court abused its discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard.'" *Id*. (citing *Curry*, 119 So. 3d at 365 (¶8)). A chancery court's findings of fact "are entitled to deference when reviewed on appeal"; whereas the court's "rulings of law are subject to de novo consideration." *Dorr v. Dorr*, 797 So. 2d 1008, 1012 (¶12) (Miss. Ct. App. 2001).

**DISCUSSION**

I.   **Whether the chancery court erred in denying Roland's request for a reduction in alimony to Deborah.**

¶13. Roland asks this Court to reverse and render the chancery court's March 2023 judgment, arguing that he presented clear evidence "that [his] income had been drastically reduced by the unforeseen bankruptcy of his retirement plan." Roland notes that he had provided "two letters from [PBGC] corroborating [his] testimony, Rule 8.05 Financial Disclosure, and income tax returns that his retirement income had been cut in half by the bankruptcy of his retirement fund."

¶14. At the July 2022 hearing, Deborah objected to the submission of copies of Roland's tax returns from his CPA, telling the court that in prior judicial proceedings, the tax returns were later amended and were not reflective of what was actually filed with the IRS. The court ruled:

> [T]he submission by [Roland] of the two tax returns in question, [2020] and [2021], is not the best evidence. . . . Mrs. Weeks is not going to trust anything that's provided by this [CPA] firm, and I'm dealing with the rules of evidence. And the rules of evidence require that before something is submitted into evidence that it be factual and actual and that it is what it purports to be. This may well be what it purports to be, but that's subject to more proof than what you've presented here so far.

The chancery court also found that "there is nothing in the record to establish that what Mr. Weeks is telling me [(i.e., that he lost half his income)] is fact." Therefore, in the August 2022 order, the court afforded Roland an opportunity to produce his signed 2020 and 2021 tax returns from the IRS, along with "[s]worn documentation from the [PBGC] substantiating Roland's claim that his retirement income has been reduced since January 2020."

¶15. Roland admits in his brief that he was unable to obtain the sworn documentation from PBGC as the court had requested. Furthermore, the record shows that Roland only submitted a summary tax transcript from the IRS, not the actual signed and IRS-filed returns. The IRS cover letter for those transcripts stated:

> A tax return transcript contains most of the information from the original return, along with information from the forms and schedules filed with the return. The transcript also contains corrections we made to the return if we discovered a math mistake.
>
> The transcript does not contain changes made to the return after it was filed. These changes could include filing an amended return and payments made.

Deborah argued that the transcripts

> are not evidence of any income for Mr. Weeks. And the previous tax returns that I presented to the Court show his three retirement plans. He is stating that he only receives the $74,000. It has been 74 thousand plus dollars since it was instigated. . . . He has not shown loss of any income from any retirement plans and produced any evidence from McClatchy, Knight Ridder, or anyone that these plans were resolved.

9

After questioning why the requested "official tax returns" could not be obtained from the IRS, the chancery court concluded that what Roland "has here today is documentation, of what his income is, which does not substantiate any reduction."

¶16. Roland contends on appeal that the copies of his tax returns he had submitted from his CPA were sufficient evidence to support his request to decrease the monthly alimony payment. "The chancellor is tasked with the duty of evaluating the evidence and the credibility of the witnesses." *Alexis v. Black*, 283 So. 3d 1105, 1110 (¶19) (Miss. 2019); *see also Weston v. Mounts*, 789 So. 2d 822, 829 (¶30) (Miss. Ct. App. 2001) ("The chancellor, as trier of fact, determines the weight and credibility to be accorded evidence."). Because Deborah expressed concern that Roland and his CPA had not provided accurate representations of what was filed with the IRS, we find that the chancery court acted within its discretion to determine that those copies were not the "best evidence." *See* MRE 1002 (stating that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by law"). Furthermore, the court determined that what Roland had presented did not support a reduction in alimony.[8] Accordingly, we affirm the chancery court's ruling to set aside its temporary order reducing alimony.

## II. Whether the chancery court erred in ordering Roland to pay retroactive alimony.

---

[8] We note that the tax return documents that Roland submitted (from his CPA) show that from 2020 to 2021, his total income increased by $458 and his adjusted gross income increased by over $5,000; this increase appears to be attributable to the reduction in alimony payments.

¶17. Roland also argues that the chancery court erred in awarding Deborah the retroactive alimony payments totaling $26,586. Roland cites no authority to support this argument, except to reiterate his claim that a decrease in his retirement income warranted a reduction in alimony payments. *See Ellis v. Ellis*, 651 So. 2d 1068, 1073 (Miss. 1995) (noting that an "unsupported assignment of error" will not be considered on appeal).

¶18. Regardless, our Court has held that a chancery court has the authority to order the downward modification of alimony retroactive to the filing of the petition to modify. *Austin v. Austin*, 981 So. 2d 1000, 1006-07 (¶23) (Miss. Ct. App. 2007). We see no reason why the chancery court would not likewise have the authority and discretion to order the reimbursement of alimony reduced by the court's temporary order retroactive to the entry of that order, and Roland cites no authority to the contrary.

¶19. We therefore affirm the chancery court's judgment.

¶20. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**